FILED
2025 JUN 13 03:42 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 25-2-17766-1 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| ALYSHA HATHAWAY, an individual,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC., a foreign profit corporation doing business as AMERICAN AIRLINES and AMERICAN AIRLINES-ACM; and DOES 1-20,<br><br>Defendants. | No.<br><br>COMPLAINT |

Plaintiff Alysha Hathaway ("Plaintiff" or "Ms. Hathaway") brings this action against Defendant American Airlines, Inc. ("Defendant") and alleges, upon personal knowledge and Plaintiff's counsel's investigation, and upon information and belief as to all other matters, as follows:

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to RCW 2.08.010.

2. Venue is proper in this Court pursuant to RCW 4.12.020 because the acts and omissions alleged took place in King County, Washington and pursuant to RCW 4.12.025 because Defendant transacts business in King County, Washington.

### II. PARTIES

3. Plaintiff Alysha Hathaway is a resident of Thurston County, Washington and

COMPLAINT - 1

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

worked for Defendant in King County, Washington.

4. Defendant American Airlines, Inc. is a foreign profit corporation doing business as American Airlines and American Airlines-ACM. Defendant regularly transacts business in King County, Washington and has offices for the transaction of business in King County, Washington at 17801 International Boulevard, SeaTac, Washington 98158; 19003 16th Avenue South, SeaTac, Washington 98188; and 10630 Northeast 8th Street, Bellevue, Washington 98004.

5. Plaintiff is currently unaware of the true names and capacities of the defendants sued herein under fictitious names Does 1-20, inclusive, and therefore sues such defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of the fictitiously named defendants when their true names and capacities have been ascertained. Plaintiff is informed and believes, and thereon alleges, each of the fictitiously named defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by Plaintiff.

### III. STATEMENT OF FACTS

6. On or about June 1, 2015, American Airlines hired Ms. Hathaway as a Customer Service Agent.

7. Ms. Hathaway suffers from anxiety and depression and takes antidepressant medication.

8. Ms. Hathaway gave notice of her disability to American Airlines.

9. From approximately 2022 to 2023, Ms. Hathaway was repeatedly verbally and physically assaulted at work by her supervisor, Ms. Katherine Barcelona.

10. Ms. Barcelona worked for American Airlines as a Customer Service Supervisor.

11. As supervisor, Ms. Barcelona was in control of Ms. Hathaway's schedule.

12. Ms. Barcelona frequently scheduled them to work together and alone.

13. Ms. Barcelona frequently physically assaulted Ms. Hathaway at work, including stabbing her with pens and sharp objects, throwing objects at her face and head, pulling her hair by the ponytail, and pinching her arms, leaving her bruises.

14. Toward the end of 2022, the severity of Ms. Barcelona's physical assaults on Ms. Hathaway increased.

15. Ms. Barcelona frequently slapped, punched, and kicked Ms. Hathaway.

16. Ms. Barcelona dug her nails into Ms. Hathaway's arms.

17. Other American Airlines employees witnessed these attacks.

18. Other American Airlines supervisors also witnessed these attacks.

19. For instance, on or about October 29, 2022, Ms. Barcelona kicked Ms. Hathaway in the back.

20. A supervisor, Mr. Gabe Vasquez, witnessed this assault.

21. After her shift that day, Ms. Hathaway exchanged text messages with Mr. Vasquez, complaining about the attack and the pattern of Ms. Barcelona's repeated physical assaults on Ms. Hathaway.

22. Ms. Barcelona was aware of Ms. Hathaway's mental health disorders and of her use of antidepressants.

23. Ms. Barcelona would often use this information to taunt Ms. Hathaway.

24. For instance, Ms. Barcelona would publicly ask Ms. Hathaway if she had taken her antidepressants that day.

25. Ms. Hathaway began experiencing an increase in the frequency and severity of her anxiety and depression symptoms. She felt nauseous at the thought of going to work with Ms. Barcelona. She would hyperventilate on the way to work, requiring her to pull over on the side of the freeway to catch her breath.

26. On December 29, 2022, while Ms. Hathaway was conversing with coworkers, Ms. Barcelona publicly insulted Ms. Hathaway's appearance, commenting that her hair and makeup looked bad, she needed a haircut, and she should be embarrassed.

27. Later that night Ms. Barcelona texted Ms. Hathaway to apologize for insulting her and hurting her feelings.

28. On or about February 4, 2023, while Ms. Hathaway was wrapping up work before

a scheduled vacation, Ms. Barcelona approached her, poking her repeatedly and saying "hi." After Ms. Hathaway asked Ms. Barcelona to stop and to allow her to finish her work, Ms. Barcelona hit Ms. Hathaway in the arm with a large stack of papers. After Ms. Hathaway repeated her request for the behavior to stop, Ms. Barcelona mocked Ms. Hathaway by mimicking her requests for relief in a condescending tone.

29. After this shift, and once Ms. Hathaway got to her car, Ms. Hathaway sobbed for 20 minutes, terrorized and upset by Ms. Barcelona's continued mistreatment.

30. On or about February 5, 2023, Ms. Hathaway texted Ms. Barcelona expressing how Ms. Barcelona's mistreatment was negatively impacting Ms. Hathaway and asking her to stop. Ms. Hathaway informed Ms. Barcelona that her actions were causing her to have anxiety attacks and were detrimental to her mental health.

31. Ms. Hathaway highlighted that Ms. Barcelona's abuse felt especially harsh because Ms. Barcelona knew that Ms. Hathaway struggled with depression and anxiety.

32. Ms. Barcelona apologized for hitting and insulting Ms. Hathaway.

33. On or about February 10, 2023, Ms. Barcelona was promoted to Customer Service Manager.

34. On March 21, 2023, Ms. Hathaway's shop steward, Patty Turpin, anonymously reported Ms. Barcelona's mistreatment of Ms. Hathaway to Human Resources.

35. American Airlines subsequently reached out to Ms. Hathaway. Despite initial fears of what could happen to her as a member of a small work team, Ms. Hathaway emailed her HR representative Jody Manuele with all the details regarding the assaults she endured.

36. Following this report, an investigation into Ms. Barcelona began.

37. On March 22, 2023, Ms. Hathaway complained to her manager, Mr. Rayfrankie Concepcion, about Ms. Barcelona's harassment.

38. Mr. Concepcion instructed Ms. Hathaway to email him details regarding Ms. Barcelona's behavior.

39. Ms. Hathaway complied, marking the subject line of the email as "For you only."

40. After a few days of no response, Ms. Hathaway asked Mr. Concepcion if he had read the email. He responded that he was reading the email.

41. Ms. Hathaway never heard anything else from Mr. Concepcion again.

42. He subsequently blocked her on Instagram and other social media platforms.

43. As Ms. Hathaway later learned, Mr. Concepcion shared the details of her email with non-managerial employees.

44. Mr. Concepcion also instructed Ms. Hathaway's coworkers to block her on social media platforms.

45. Ms. Hathaway noticed that her coworkers and managers suddenly began avoiding her.

46. Her managers stopped answering her calls or emails.

47. Ms. Hathaway also learned that other employees, including coworkers and managers, were gossiping about her and the investigation. They criticized Ms. Hathaway for not reporting the abuse sooner and for waiting until Ms. Barcelona became a manager.

48. Managers shared Ms. Hathaway's emails about the harassment she suffered with her coworkers.

49. On March 23, 2023, Ms. Hathaway went on leave due to the stress of the investigation against Ms. Barcelona, as it quickly became apparent that Ms. Hathaway's fears of retaliation from her coworkers and supervisors were coming to fruition.

50. Ms. Hathaway was placed on leave without pay.

51. On April 12, 2023, American Airlines fired Ms. Barcelona. However, American Airlines made no attempt to prevent retaliation against Ms. Hathaway.

52. Her coworkers continued to talk about this situation behind her back, saying that Ms. Hathaway purposefully waited until Ms. Barcelona was promoted to bring this complaint. On information and belief, one coworker, Ana Canlapan, said that Ms. Hathaway had done this to get a "pity party" and to have the summer off.

53. Ms. Hathaway's managers completely stopped responding to her calls or emails.

54. Ms. Hathaway could not get responses to basic questions, such as her request to extend her leave, or inquiries into why American Airlines failed to submit her wages and hours to the state of Washington for two years.

55. This second issue disqualified her for Washington paid leave.

56. Ms. Hathaway's managers also refused to respond to her concerns about returning to work in an unwelcome and hostile work environment.

57. She received no response from any manager, including American Airlines Seattle General Manager Adam Diaz, regarding when she could return to work.

58. In May 2023, Ms. Hathaway received an automated message that she was invited to participate in the shift bid process, which is how American Airlines employees request their preferred schedule.

59. Based on this email, Ms. Hathaway believed her start day would be the first day of their new bid, which was June 5, 2023.

60. Ms. Hathaway selected her shift choices with no issues.

61. American Airlines administrator Fleur Lawrence emailed Ms. Hathaway, informing her the shift bid email was sent to her by accident.

62. Lawrence told Ms. Hathaway she was not permitted to bid for shifts.

63. Lawrence wrote that he believed that Mr. Concepcion had previously contacted Ms. Hathaway to ask her not to participate in the shift bid process.

64. Ms. Hathaway had not received any communication from Mr. Concepcion, about the shift bidding process, or anything else, since March 2023.

65. On June 10, 2023, American Airlines constructively terminated Ms. Hathaway's employment.

66. Ms. Hathaway sent notice of this termination to Adam Diaz of American Airlines.

67. In this letter, Ms. Hathaway explained that she was placed on leave without pay after the harassment investigation was initiated wherein she was the victim of harassment.

68. Ms. Hathaway explained that despite her numerous attempts to inquire about her

employment status and pay, American Airlines leadership refused to respond to her.

69. Ms. Hathaway felt compelled to end employment because of the intolerable working conditions created by American Airlines.

### IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DISCRIMINATION (HOSTILE WORK ENVIRONMENT)
### VIOLATION OF THE WLAD

70. Plaintiff incorporates by reference all foregoing factual allegations and realleges them as though fully set forth herein.

71. Plaintiff is a member of a protected class on account of her disabilities.

72. Plaintiff was harassed by her supervisor on account of her membership to her protected class.

73. Plaintiff's harassment was unwelcome.

74. Plaintiff was harassed by a supervisor who had the authority and power to affect her hours, wages, and working conditions.

75. Defendant authorized, knew, or should have known of the harassment and failed to take reasonably prompt and adequate corrective action.

76. Plaintiff's harassment was so severe or pervasive that it altered the conditions of her employment.

### SECOND CAUSE OF ACTION
### RETALIATION
### VIOLATION OF THE WLAD

77. Plaintiff incorporates by reference all foregoing factual allegations and realleges them as though fully set forth herein.

78. Plaintiff engaged in a protected activity when she reported her supervisor's language and conduct that she reasonably believed to be discrimination or harassment.

79. Defendant was aware of Plaintiff's engagement in the protected activity.

80. Shortly after Plaintiff engaged in the protected activity, Defendant took an adverse employment action against Plaintiff.

COMPLAINT - 7

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

81. Plaintiff was performing satisfactory work leading up to and at the time of Defendant's adverse employment actions.

82. Plaintiff's engagement in the protected activity was a substantial factor in Defendant's adverse employment actions.

### THIRD CAUSE OF ACTION
### WRONGFUL TERMINATION
### VIOLATION OF PUBLIC POLICY

83. Plaintiff incorporates by reference all foregoing factual allegations and realleges them as though fully set forth herein.

84. Defendant constructively terminated Plaintiff for reasons that contravene a clear mandate of public policy as established by prior judicial decisions or constitutional, statutory, or regulatory provisions or schemes.

85. Washington law recognizes a tort claim for wrongful termination in violation of public policy where employees are discharged in retaliation for reporting employer misconduct, i.e., whistleblowing. *Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 723 (2018).

86. Washington has a clear public policy mandate to protect victim's of battery or assault and to protect employees who report their employer's unlawful harassment or discrimination.

87. Plaintiff reported her supervisor's discrimination, harassment, and verbal and physical abuse.

88. Shortly after Plaintiff reported her employer's misconduct, Defendant constructively terminated Plaintiff by making the working conditions so intolerable that she felt compelled to resign.

89. Plaintiff was performing satisfactory work leading up to and at the time of her termination.

90. Plaintiff's report of her supervisor's misconduct was a substantial factor in Defendant's termination of Plaintiff.

COMPLAINT - 8

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

## VI. REQUEST FOR RELIEF

91. Based on the foregoing, Plaintiff asks this Court for the following relief:

    a. Lost back pay and benefits in amounts to be established at trial;

    b. Lost front pay and benefits in amounts to be established at trial;

    c. Emotional distress and mental anguish damages, including but not limited to humiliation, fear, and anxiety in amounts to be established at trial;

    d. Attorneys' fees and costs under RCW 49.48.030 or as otherwise allowed by law;

    e. Prejudgment interest; and

    f. Any additional relief which the Court finds equitable, appropriate, or just.

DATED June 13, 2025.               EMERY | REDDY, PLLC


                          By:   /s/ Patrick B. Reddy
                                Patrick B. Reddy, WSBA No. 34092
                                Emery Reddy, PLLC
                                600 Stewart Street, Suite 1100
                                Seattle, WA 98101
                                Phone: (206) 442-9106
                                Fax: (206) 441-9711
                                Email: reddyp@emeryreddy.com
                                *Attorney for Plaintiff Alysha Hathaway*

COMPLAINT - 9

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711